UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LATONYA PURVIS on her behalf and as Mother : 
and Natural Guardian of R.J., a minor, :
:
                                 Plaintiff, :         **MEMORANDUM AND ORDER**
       -against- :              23-cv-445 (DLI)(AYS)
:
COUNTY OF SUFFOLK, SUFFOLK COUNTY :
POLICE DEPARTMENT, ACTING POLICE :
COMMISSIONER STUART CAMERON, in his :
individual and official capacity, "POLICE :
OFFICERS JOHN AND JANE DOES 1-10" :
representing as yet unknown and unidentified :
members of the Suffolk County Police Department :
(all in their individual and official capacities as :
employees of the Suffolk County Police Department): 
and BERNARD STANCIL, :
:
                              Defendants. :
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On January 20, 2023, Plaintiff Latonya Purvis ("Plaintiff") filed this action against the County of Suffolk ("Suffolk County"), Police Commissioner Geraldine Hart, the Suffolk County Police Department, Officers John and Jane Doe 1–10 (collectively, the "Officer Defendants"), and Bernard Stancil ("Stancil") (collectively, "Defendants"), on behalf of herself and her minor child ("R.J.") (collectively, "Plaintiffs") alleging that Defendants are liable under New York law and pursuant to 42 U.S.C. § 1983 for violating their constitutional rights. Complaint, Dkt. Entry No. 1. On March 3, 2023, before serving Defendants with the original complaint, Plaintiffs amended the complaint as of right by substituting Defendant Hart with Acting Police Commissioner Stuart Cameron (together with Suffolk County, the "County Defendants"). *See*, Amended Complaint ("Am. Compl."), Dkt. Entry No. 9.

The County Defendants moved to dismiss the Amended Complaint in lieu of an answer

pursuant to Fed. R. Civ. P. 12(b)(6). *See*, County Defs.' Mot. to Dismiss ("Defs.' Mot."), Dkt. Entry No. 16. Plaintiffs opposed. *See*, Pls.' Opp'n ("Opp'n"), Dkt. Entry No. 18. The County Defendants replied. Reply, Dkt. Entry No. 19.

For the reasons set forth below, the County Defendants' motion to dismiss the Amended Complaint is granted with prejudice. The Amended Complaint is dismissed as to all Defendants.

## BACKGROUND

The facts set forth below are taken from the Amended Complaint and accepted as true as required at this stage. On October 24, 2021, Plaintiff's minor daughter, R.J., attended a birthday party at the home of Shawni Carter, R.J.'s stepmother ("Carter"). Am. Compl. ¶¶ 24, 27. The Officer Defendants were called to the party after an argument broke out between Carter and her neighbors, Stancil and his family. *Id.* at ¶¶ 25–30. All of the Officer Defendants were Caucasian, except for one whose race Plaintiffs could not determine. *Id.* at ¶ 30.

A physical altercation between Stancil's family members and Carter began in the presence of the Officer Defendants. *Id.* at ¶ 31. The altercation lasted several minutes, during which the Officer Defendants "stood and watched, without attempting to take any action to diffuse" the situation. *Id.* at ¶ 32. R.J. saw the attack and attempted to help Carter, but, when she did, Stancil, a large male, picked up R.J., slammed her into the ground, and jammed his elbow into her throat. *Id.* at ¶¶ 33–34. R.J. was pinned under Stancil and could not move him. *Id.* at ¶ 35. Simultaneously, some of the Officer Defendants were holding down a party guest who was not involved in the altercation, but the other officers "were just steps away" and watched the incident occur, but "took no action to prevent the attack and declined to . . . [help R.J.]." *Id.* at ¶¶ 34, 36. Carter pled with the Officer Defendants to help R.J., but received "no affirmative response in either word or action." *Id.* at ¶ 36. Eventually, family members removed Stancil from R.J. *Id.* at ¶ 40.

R.J. was diagnosed with a broken hand and received mental and physical therapy following the attack. *Id.* at ¶¶ 53–54. Plaintiffs claim that, by failing to act, the Officer Defendants "fostered, permitted and seemed to encourage these criminal activities." *Id.* at ¶ 34.

After the attack, Plaintiff and Carter attempted to obtain a police report from the Suffolk County Police Department. *Id.* at ¶ 46. While at the precinct, they saw one of the Officer Defendants and confronted him about the incident. *Id.* at ¶ 47. The officer responded that they did not intervene in the assault because "[i]t seemed like you guys had it handled" and they "were trying to get other kids." *Id.* at ¶¶ 47–48. Plaintiffs neither were given a police report nor permitted to provide a statement until late November 2021. *Id.* at ¶ 50.

Plaintiffs claim that the County Defendants violated the Fourteenth Amendment's Due Process Clause through the Officer Defendants' failure to intervene and help R.J. *Id.* at ¶¶ 37–39, 59–65; Opp'n at 1–3. Specifically, they argue that the Officer Defendants "created the circumstances" that led to the assault, encouraged Stancil's actions, and allowed the attack to continue without intervening. Am. Compl. ¶¶ 37–39; Opp'n at 2–3. Plaintiffs further allege that the Officer Defendants would have intervened "[h]ad Plaintiffs and their attacker been white." Am. Compl. ¶ 59; Opp'n at 3.

Plaintiffs also assert a municipal liability claim against Suffolk County pursuant to *Monell v. Dep't of Social Serv's*, 436 U.S. 658 (1978), claiming that Suffolk County's "pattern of unequal and discriminatory policing of African American[s]," tolerance of discriminatory conduct, deficient training, and failure to report and investigate allegations of misconduct caused the Officer Defendants to believe that their discriminatory conduct was permissible. Am. Compl. ¶¶ 7, 66–80; Opp'n at 5. Finally, Plaintiffs assert state claims pursuant to N.Y. Civil Rights Law §40, as well as negligence, negligent infliction of emotional distress, intentional infliction of emotional

distress, and assault and battery. Am. Compl. ¶¶ 81–122. Plaintiffs have withdrawn their claims against Defendant Cameron, and, thus, those claims are dismissed. Opp'n at 1.

The County Defendants argue that Plaintiffs have failed to state due process, equal protection or *Monell* claims pursuant to § 1983. Specifically, they contend that: (1) the allegations are conclusory; (2) the alleged conduct does not constitute a due process or equal protection violation; (3) no Suffolk County custom or policy caused a constitutional injury; (4) the absence of an underlying constitutional violation defeats Plaintiffs' municipal liability claim; (5) Plaintiffs' state law claims should be dismissed since the federal claims fail; and (6) the Court should not grant leave to amend because any amendment would be futile. Defs.' Mot. at 2–4.

Plaintiffs argue that: (1) the Officer Defendants had a duty to intervene because they "fostered" and "encourage[d]" Stancil's assault; (2) the Officer Defendants would have intervened if those involved in the altercation were white; and (3) Suffolk County emboldened the Officer Defendants by failing to train and discipline its officers. Opp'n at 1–6.

## DISCUSSION

### I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless,

4

"threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted). The court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

Title 42 U.S.C. § 1983 "provides that a person acting under color of law who subjects, or causes to be subjected any citizen of the United States to deprivation of his constitutional rights is liable to the party injured." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (internal quotation marks omitted). Here, Plaintiffs seek to hold Suffolk County, the Suffolk County Police Department, and the Officer Defendants liable pursuant to § 1983.

## II.    Claims Against the Suffolk County Police Department

As the County Defendants correctly contend, it is well settled that the Suffolk County Police Department lacks the capacity to be sued as an administrative arm of Suffolk County, which is the municipal entity. *See*, *Spagnuolo v. Suffolk Cnty.*, 2017 WL 4326510, at *2 (E.D.N.Y. Sept. 28, 2017), *aff'd sub nom.*, *Spagnuolo v. Howell*, 814 F. App'x 614 (2d Cir. 2020); *Carthew v. Cnty. of Suffolk*, 709 F. Supp.2d 188, 195 (E.D.N.Y. 2010); *Pena v. Suffolk Cnty. Police Dep't*, 2021 WL 3848299, at *2 (E.D.N.Y. Aug. 27, 2021); Defs.' Mot. at 1 n.1. Faced with this well settled legal principle, Plaintiffs neither sought to amend their complaint nor did they address the issue in their opposition memorandum. Accordingly, Plaintiffs are deemed to have abandoned this

5

argument. *See*, *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. R & C Transit, Inc.*, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y.), *aff'd*, 130 F.3d 1101 (2d Cir. 1997). Thus, the claims against the Suffolk County Police Department are dismissed with prejudice.

### III. Claims Against Suffolk County and the Officer Defendants

To hold a municipality accountable for the alleged constitutional violations of its employees, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).

The County Defendants argue that: (1) Plaintiffs fail to establish an underlying due process or equal protection violation; and (2) Plaintiffs failed to allege that any official policy or custom was the cause of a constitutional injury. Defs.' Mot. at 2–4. Plaintiffs contend that: (1) the Officer Defendants violated the Due Process and Equal Protection Clause because they "encouraged" Stancil's assault of R.J.; (2) the Officer Defendants would have intervened if those involved in the altercation were white; and (3) Suffolk County is liable under *Monell* because it failed to discipline officers for misconduct or train its officers properly. Opp'n at 1–6.

#### A. Due Process Clause Claims

Plaintiffs fail to allege any underlying due process violation because: (1) their conclusory allegations do not establish that the Officer Defendants had a duty to intervene in the assault on R.J.; and (2) the officers' failure to do so does not constitute the "conscience shocking" conduct required for a due process violation as a matter of law.

6

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. Of Trs. Of Vill. Of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Thus, as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

Notwithstanding the foregoing well settled principles, the Second Circuit has recognized two narrow exceptions where the state has an affirmative duty to protect individuals from private violence: (1) the "special relationship" exception; and (2) the "state created danger" exception. The "special relationship" exception applies "when the State takes a person into its custody and holds him there against his will," as that creates "a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200. The Second Circuit has emphasized that "involuntary custody [is] the linchpin of any special relationship exception." *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008) (collecting cases).

On the other hand, the "state created danger" exception requires the state to intervene where "its officers assist in creating or increasing the danger that the victim faced at the hands of a third party." *Matican*, 524 F.3d at 157. While the "special relationship" exception arises from the relationship between the state and the victim, the "state created danger" exception arises from the relationship between the state and the private assailant. *Pena v. DePrisco*, 432 F.3d 98, 109 (2d Cir. 2005). This exception turns on whether the conduct creating or increasing the danger was

7

"affirmative," which gives rise to liability or "passive," which does not. *Matican*, 524 F.3d at 157. An officer's affirmative conduct gives rise to liability if it "communicates, explicitly or implicitly, official sanction of private violence." *Okin v. Vill. Of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009). However, "[a] failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state *created* danger." *Pena*, 432 F.3d at 110 (emphasis in original).

As discussed more fully below, Plaintiffs have failed to allege facts sufficient to establish that either of these exceptions apply to the circumstances here. Consequently, the Officer Defendants did not have a duty to intervene, and Plaintiffs' due process claim fails.

### 1. Special Relationship

Plaintiffs do not argue that the "special relationship" exception applies, nor could they. Courts in this circuit have applied the exception only to instances where, contrary to the circumstances here, the victim is in the physical custody of law enforcement or the government. *See*, *Cruz v. N.Y.C. Hous. Auth.*, 2004 WL 1970143, at *8 (S.D.N.Y. Sept. 3, 2004) (the Second Circuit only has applied the exception to "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and . . . a social service agency and foster child" (citations omitted)); *See also*, *Rembert v. City of New York*, 2019 WL 5742591, at *1, 4–5 (E.D.N.Y. Nov. 5, 2019) (denying summary judgment where officer failed to intervene in EMT's attack on plaintiff, who was handcuffed and shackled in an ambulance); *Briggs v. Cnty. Of Monroe*, 293 F. Supp.3d 379, 388 (W.D.N.Y. Mar. 16, 2018) ("[T]he Court is not aware of any case in which the special relationship exception applied under circumstances where the individual was not in the physical custody of law enforcement or the government"). Plaintiffs do not allege that R.J.

ever was in custody with respect to the events in question and, as such, the exception does not apply.

### 2. State Created Danger

Plaintiffs also have failed to allege facts sufficient to support a "state created danger" theory. Plaintiffs claim that the Officer Defendants "fostered, permitted and seemed to encourage [Stancil's] criminal activities," by failing to intervene in the assault. Am. Compl. ¶ 3; Opp'n. at 3 (citing *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993)). By contrast, the County Defendants contend that police officers have a duty to intervene only where another officer is engaging in excessive force. Reply at 2.

Plaintiffs' conclusory assertions are untethered from the facts alleged in the complaint. The complaint alleges that, amid the broader altercation, Stancil attacked R.J. suddenly and the Officer Defendants simply did not interfere. Am. Compl. ¶¶ 31–36. Several courts in this circuit have held that such conduct does not violate the Due Process Clause. *See*, *Hernandez v. City of New York*, 2022 WL 316938, at *2, 7–8 (S.D.N.Y. Feb. 2, 2022) (no due process violation where plaintiffs' allegation that officers "watched [a] fight for five-to-ten minutes" without intervening was contradicted by video evidence, but "even if [the] allegation was true, a failure by the officers to intervene to protect Plaintiffs from violence during the altercation, without more, does not amount to a state created danger"); *Richardson v. Doe*, 2021 WL 5594640, at *1–2 (E.D.N.Y. Nov. 30, 2021) (MTA officers' failure to intervene in plaintiff's altercation with private citizen did not constitute a due process violation, even though Plaintiff alleged that the officers "should have seen the incident" via video surveillance); *Gantt v. Ferrara*, 2017 WL 1192889, at *1, 11–12 (S.D.N.Y. Mar. 29, 2017) (dismissing § 1983 claims where officers "stood by and did nothing to intervene" in a bar fight, because the officers did not have "direct contact" with the attackers,

9

"explicit[ly] encourage[]" their conduct, or imply through "repeated, sustained inaction" that the attackers' conduct would go unpunished); *Tufaro v. City of New York*, 2014 WL 4290631, at *3–4 (S.D.N.Y. Aug. 28, 2014) (dismissing due process claim where nurse was attacked by detained patient who was restrained improperly by police officers).

Plaintiffs' reliance on *Dwares* is misplaced because the facts readily are distinguishable. *See*, *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993). In that case, the plaintiff was assaulted by "skinheads" while at a political rally involving the burning of an American flag. *Id.* at 96–97. The police officers witnessed the attack on the victim, knew that the skinheads were likely to inflict violence, and told the attackers in advance that they would not interfere with an attack on individuals burning flags. *Id.* at 96–97, 99. The Second Circuit held that the plaintiff stated a due process claim in light of the defendants' "prearranged official sanction of privately inflicted injury." *Id.* at 99. Critical to this holding was: (1) the existence of a particular relationship between the officers and the attacker; and (2) the explicit, prearranged encouragement of the attack. *Id.*; *See also*, *Hemphill v. Schott*, 141 F.3d 412, 418–19 (2d Cir.1998) (state created danger existed where police officers returned gun to private citizen, took citizen along to arrest, and permitted shooting); *Pena*, 432 F.3d at 111–12 (police officers implicitly encouraged off duty officer to drink and drive, after which he killed three individuals while driving drunk).

Here, by contrast, Plaintiffs do not allege that the Officer Defendants: (1) coordinated with, or even met Stancil before the attack; (2) took any affirmative action to assist or encourage him; or (3) had any advance knowledge of the attack. In fact, Stancil eventually was arrested for his attack on R.J. *See*, Am. Compl. ¶¶ 11, 51. Moreover, Plaintiffs acknowledge that the Officer Defendants gave "no affirmative response" to Carter's requests for help and concede that they have "not yet made any allegations that Defendant Officers made a verbal agreement . . . to allow

10

the violence to continue." Opp'n at 3; Am. Compl. ¶ 36.

As discussed above, while there are limited circumstances in which officers must protect citizens from private violence, Defendants incorrectly contend that officers must intervene only when another officer is using excessive force. Reply. at 2. However, Plaintiffs have failed to show that either the "special relationship" or "state created danger" exception required the Officer Defendants to intervene in the altercation here.

### 3. "Conscience Shocking" Conduct

Finally, even if one of the exceptions applied, the conduct alleged does not rise to the "conscience shocking" level required to state a due process claim. The Supreme Court has held that negligently inflicted injuries are "categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). The complaint relies completely on boilerplate allegations of intent and recklessness without any factual support. Am. Compl. ¶¶ 3, 5–6, 37, 63–64, 78–79. Without any facts to substantiate Plaintiffs' allegations of scienter, there is no basis to conclude that the Officer Defendants' conduct shocked the conscience. *See*, *Gantt*, 2017 WL 1192889 at *13 ("Just because Plaintiff suffered injuries during [a bar] fight in [the officers'] presence does not mean Defendants' conduct shocked the conscience.").

### B.  Equal Protection Clause Claims

Plaintiffs also have failed to allege facts sufficient to support an equal protection claim. To state a claim for an equal protection violation, a plaintiff must allege: "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (alteration in original)

11

(quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). The discrimination must be intentional, not merely negligent or reckless. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

Plaintiffs contend that: (1) their treatment was "fueled by racial animus, bias and contempt"; (2) the Officer Defendants would have intervened "[h]ad Plaintiffs and their attacker been white"; and (3) statistical evidence regarding Suffolk County's failure to discipline police misconduct shows that the Officer Defendants' conduct was fueled by racial animus. Am. Compl. ¶¶ 55–56, 74–75; Opp'n at 3–4. The County Defendants contend that these allegations are baseless and conclusory. Defs.' Mot. at 3; Reply at 2.

The Court concurs with the County Defendants. Plaintiffs' bald allegations of discriminatory motive are conclusory and lack any factual support. It is not enough that most of the Officer Defendants were white and those involved in the altercation were African American. *See*, *Miller v. Terrillion*, 391 F. Supp.3d 217, 225 (E.D.N.Y. 2019) ("The mere fact that Defendant is white and Plaintiff is black does not mean that Defendant's arrest of Plaintiff was motivated by Plaintiff's race.") (citation omitted). Plaintiffs do not allege, for example, that the Officer Defendants used a racial epithet or treated nonminority party attendees preferentially while ignoring R.J. *See*, *Ali v. Connick*, 136 F. Supp.3d 270, 280 (E.D.N.Y. 2015) ("[O]fficers' use of racial epithets may be regarded as direct evidence of racial animus."); *Coward v. Town & Vill. Of Harrison*, 665 F. Supp.2d 281, 303 (S.D.N.Y. 2009) (denying summary judgment where plaintiff's allegation that "he was the only African-American in the park at the time of his arrest" raised

12

inference of racially discriminatory motive). Baselessly asserting that the Officer Defendants' actions were racially motivated does not make it so.

Furthermore, Plaintiffs' statistics do not suggest that the Officer Defendants had a discriminatory motive. *See*, Am. Compl. ¶¶ 74–75. Liberally construed, Plaintiffs' data seems to indicate that most reports of discriminatory police conduct in Suffolk County do not result in charges. *Id.* at ¶ 75. However, the fact that most reports of misconduct go unpunished does not mean that those reports had merit or that the Officer Defendants *here* had any discriminatory motive. Even if the data had some probative value, statistics alone do not create an inference that individual officers had a discriminatory motive. *See*, *Leith v. Cnty. Of Nassau*, 2023 WL 7017041, at *3 (E.D.N.Y. Oct. 25, 2023) (granting motion to dismiss and noting that "[s]tatistics alone do not suffice to establish an individual disparate treatment claim for a very good reason: the particular plaintiff must establish *he* was the victim of racial discrimination" (emphasis in original) (citation omitted)). Thus, Plaintiffs' equal protection claims fail as well.

**C.    *Monell* Claims**

Plaintiffs fail to state a claim for municipality liability pursuant to *Monell* because: (1) there is no underlying constitutional violation; (2) they do not allege plausibly the existence of a discriminatory municipal policy or custom; and (3) even if they did, Plaintiffs do not connect the alleged policy or custom to the Officer Defendants' conduct here. 436 U.S. 658 (1978). "[A] municipality cannot be made liable by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Instead, a plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Roe*, 542 F.3d at 37 (internal quotation marks omitted); *Hunter v. City of New York*, 35 F. Supp.3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against

a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right."). An underlying constitutional violation is a prerequisite to municipal liability. *See*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

A plaintiff need not point to an official agency rule to state a *Monell* claim. Instead, he or she can show that a discriminatory practice is so "persistent or widespread" that it constitutes a "custom or usage with the force of law." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992). For example, a municipality can be held liable for failing to train its employees properly or "persistent[ly] fail[ing] to discipline subordinates who violate civil rights." *Gantt*, 2017 WL 1192889 at *7–8 (S.D.N.Y. Mar. 29, 2017); *Batista*, 702 F.2d at 397. A failure to train theory requires plaintiffs to "plausibly allege a *specific deficiency* in the municipality's training." *Calderon v. City of New York*, 138 F. Supp.3d 593, 613 (S.D.N.Y. 2015) (emphasis added).

In light of Plaintiffs' failure to allege any independent violation of the Due Process or Equal Protection Clause, Plaintiffs' *Monell* claim fails on its face. *See*, *Hernandez*, 2022 WL 316938 at *9 (municipal liability claims failed because "the Court has found each of Plaintiffs' § 1983 claims unavailing" and there was no "independent constitutional violation to support Plaintiffs' municipal liability claim"); *Ferguson v. Cai*, 2012 WL 2865474, at *6 (S.D.N.Y. July 12, 2012) ("Because the Court has concluded that [plaintiff's] constitutional rights have not been violated, his claim of municipal liability pursuant to *Monell is*, *a fortiori*, also meritless." (emphasis in original)).

Even if there was an underlying constitutional violation, Plaintiffs' *Monell* claim would fail. Plaintiffs contend that the Officer Defendants' discriminatory acts were caused by Suffolk County's failure to: (1) train its officers properly; and (2) meaningfully investigate and respond to

14

reports of discriminatory conduct. Am. Compl. ¶¶ 7, 66–80; Opp'n at 4–5. Specifically, Plaintiffs allege that Suffolk County "has failed to respond" to police misconduct in general, and the Officer Defendants "relied upon that flawed policy" to engage in discriminatory conduct of their own. Am. Compl. ¶ 76. Similarly, they claim that Suffolk County's "systemic flaws, policies and customs" of permitting discriminatory conduct "caused the Defendant OFFICERS to believe that discriminatory abuses . . . would not be aggressively, honestly and properly investigated." *Id.* at ¶ 77. The County Defendants counter that the complaint is "void of any facts sufficient to establish that a custom and/or policy of the County caused a violation of Plaintiffs' constitutional rights." Defs.' Mot. at 4.

First, Plaintiffs provide no factual basis for their allegation that Suffolk County "fail[ed] to properly train and supervise" its police officers and have not identified a specific deficiency in Suffolk County's training. Am. Compl. ¶¶ 106, 112; *See*, *Santos v. New York City*, 847 F. Supp.2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff . . . [the] claims against the City are dismissed with prejudice." (citation omitted)). Accordingly, the complaint does not contain facts sufficient to support a failure to train theory.

Moreover, Plaintiffs have not alleged plausibly that Suffolk County "persistent[ly] fail[ed] to discipline subordinates who violate civil rights." *Batista*, 702 F.2d at 397. As discussed above, Plaintiffs assert, based on statistics alone, that most allegations of discriminatory conduct in Suffolk County are dismissed "free of any charge." Am. Compl. ¶ 75. However, these statistics say nothing about, for example: (1) the frequency and nature of the discipline imposed when an allegation is substantiated; (2) the nature of Suffolk County's response to substantiated allegations

15

of misconduct; (3) the merits and volume of the allegations; (4) the race of the complainants;[1] or (5) whether the allegations are similar to or different from the conduct at issue here. *See*, *Fantozzi v. City of New York*, 2023 WL 4472305, at *5–6 (S.D.N.Y. July 11, 2023) (dismissing failure to discipline claim where statistics showing low percentage of substantiated reports were "decoupled from any assertion of how the NYPD responded to [] substantiated cases"); *cf. McCants v. City of Newburgh*, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (declining to dismiss *Monell* claim where plaintiff "detail[ed] seventeen [similar] excessive force claims made against the City").

Finally, Plaintiffs do not connect Suffolk County's alleged failure to train or discipline its officers to the Officer Defendants' conduct in this case. It is completely speculative to suggest that the Officer Defendants somehow were emboldened by Suffolk County's disciplinary and training policy. *Id.* at ¶ 77. Plaintiffs do not, for example, provide specific examples of Suffolk County ignoring similar allegations, nor do they allege that Suffolk County ignored a pattern of discriminatory conduct by the Officer Defendants. *See*, *Fantozzi*, 2023 WL 4472305 at *6 (dismissing failure to discipline claim where statistics "point[ed] generically to use of force allegations against the City, without connecting any specific allegations (substantiated or not) to his case"); *Boddie v. City of New York*, 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016) (unsupported allegations that the police department's failure to discipline misconduct "emboldened [a] NYPD Officer" to use excessive force were insufficient where complaint failed to cite "other similar occasions" of misconduct). Thus, Plaintiffs' conclusory, unsupported, and speculative allegations cannot survive a motion to dismiss.

---

[1] Plaintiffs "*believe*[] that the refusal to address these complaints are disproportionately occurring when the Complaints [sic] are African-American," but they provide no factual basis for this assertion. Opp'n at 4 (emphasis added).

### IV. State Law Claims

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims since all the federal claims have been dismissed. While the Court has discretion to hear such claims, the Second Circuit has counseled against exercising supplemental jurisdiction where all federal claims have been dismissed. *See*, 28 U.S.C. § 1367(a); 28 U.S.C. § 1367(c)(3); *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (explaining that if "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well" (quoting *Castellano v. Bd. Of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)); *Hernandez*, 2022 WL 316938 at *9–10 (declining to exercise supplemental jurisdiction over state law claims where court dismissed § 1983 claims). Accordingly, the state law claims are dismissed without prejudice.

### V. Leave to Amend

The Court denies Plaintiffs' request for leave to amend. *See*, Opp'n at 7–8. While leave should be freely granted when justice so requires, a court should not grant leave to amend where it would be "futile." *See*, Fed. R. Civ. P. 15(a)(2); *Cuoco*, 222 F.3d at 112. As discussed above, the deficiencies in the Amended Complaint are pervasive and go to the heart of Plaintiffs' claims. Plaintiffs could not state a claim to relief absent wholesale changes to the factual circumstances of this case. Plaintiffs already had one opportunity to amend the complaint and, had such facts existed, Plaintiffs would have included them. Thus, any amendment would be futile and this case is dismissed with prejudice.

17

## **CONCLUSION**

For the reasons set forth above, the County Defendants' motion to dismiss the Amended Complaint is granted. Consequently, the federal claims are dismissed with prejudice as to all Defendants, and, as the Court declines to exercise supplemental jurisdiction over the state law claims, those claims are dismissed without prejudice as to all Defendants.

SO ORDERED.

Dated: Brooklyn, New York
        December 6, 2024

                                                    /s/
                                            DORA L. IRIZARRY
                                        United States District Judge